FRED WALTS AND NELLIE CLARK, Appellants, v. GRAND LODGE OF IOWA WORKMEN OF THE STATE OF IOWA, AND MAGGIE WALTS AND ALVIN WALTS.

Action on Beneficiary Certificate: PROOF OF SIGNATURE: PRESUMP-
TIVE EVIDENCE.   Proof of genuineness of signature of deceased
1   to a letter directing a change in the beneficiary in a policy of life insurance raises a presumption that same was voluntar-ily and consciously signed, with knowledge of its contents.

Burden of Proof:   UNDUE INFLUENCE.   The burden of proof is on
2   the one charging undue influence.

Unsoundness of Mind:.   EVIDENCE.   Age, impaired physical vigor,
3   and at times, flighty and irrational talk, and stupor and un-consciousness, the result of disease and drugs, are not sufficient to establish permanent insanity or mental unsoundness.

Same:   EVIDENCE.   A letter from deceased in lieu of a blank
4   furnished by the insurance company directing change of bene-ficiaries is not evidence of mental unsoundness.

*Appeal from Polk District Court.*—Hon. C. A. BISHOP, Judge.

MONDAY, OCTOBER 27, 1902.

ACTION to recover on a beneficiary certificate in the Grand Lodge of Iowa Workmen of the State of Iowa, issued to Marvin Walts, deceased. Defendant Maggie Walts is the widow of deceased and Alvin Walts their son. Plaintiffs are children of deceased by a former marriage. The grand lodge paid the amount of the certificate into court, asking that the right thereto be determined as between the other defendants (who will be treated as the sole defendants in this opinion) and the plaintiffs. Plaintiffs claim under the certificate as originally issued, while defendants claim by virtue of a change of beneficiary, alleged to have been made by direction of deceased before his death. Judgment for defendants, from which plaintiffs appeal.—*Affirmed.*

*Thomas A. Cheshire* for appellants.

*Courtright & Arbuckle* for appellees.

McCLAIN, J.—The attempted change of beneficiary, the validity of which is in question, was made by the officers of the grand lodge in pursuance of a letter in the handwriting of Maggie Walts, requesting that the change be made, to which her husband's name was affixed in his own handwriting, with the additional words following his name, also in his handwriting, "This is my wish to have it done;" and the only question in the case is as to whether this letter, containing the direction for change of beneficiary, was the valid act of the deceased. That the signature and words following it, above quoted were in his handwriting, is not disputed; but it is contended that there is no sufficient evidence that the contents of the

letter which he signed were known or assented to by him, and it is futher contended that he was not at the time of affixing his signature possessed of sufficient mental capacity to exercise the authority to make the change of beneficiary directed in the letter.

I.    In the first place, it must be conceded that on proof of the genuineness of the signature it is to be presumed, in the absence of any evidence or circumstances pointing to a contrary conclusion, that the letter sent was the voluntary act of the deceased, executed with his knowledge of its contents, and with the intent that it should be acted upon by the officers of the grand lodge.   Although counsel for plaintiffs contends that the failure of Maggie Walts to háve any witness present at the time when, according to her testimony, she wrote the letter under her husband's direction, and he affixed his signature thereto, is a suspicious circumstance, sufficient to overcome the presumption arising from the proof of the genuineness of the signature, we find nothing in the evidence throwing legitimate suspicion upon the transaction, or rendering it necessary for her to explain or substantiate it.   She is, of course, incompetent as a witness to testify with reference to the transaction between herself and husband in connection with which the letter was written and signed, but no evidence is necessary, in the absence of any showing that the letter was not voluntarily and consciously signed, with knowledge of its contents.   The instrument speaks for itself.   In this connection the claim is made for plaintiffs that there is evidence to show that the intentions of deceased existing up to the time of the writing of this letter were to have the certificate continue in force for the benefit of plaintiffs, and that this fact tends to discredit the letter directing that the change of beneficiary be made.   But the whole evidence on the subject amounts to this; that about the

*1. PROOF of signature: presumption: evidence.*

time of the marriage of deceased to his second wife he did express an intention that the certificate should remain payable to his children by his first marriage, but subsequently, and prior to the commencement of the sickness which finally resulted in his death (during which sickness the letter in question was written), he wrote a letter to the officers of the grand lodge, asking how a change of beneficiary might be made, and expressing the intention to make such change, and after the writing of the letter in which the change was definitely directed, he spoke of having written it, and expressed anxiety as to whether the officers of the grand lodge had received and acted upon it. It is true that there is some effort made, by way of argument, to throw discredit on the evidence of witnesses as to these matters, but we may say here, with reference to the entire evidence in the case, that while conflicting in some minor details, there is no substantial conflict as to any of the material facts, and there is no reason to believe that any of the witnesses have testified falsely. There is no occasion disclosed by the evidence for presuming that at the time deceased signed the letter directing the change of beneficiary he did not intend to direct such change to be made, unless it shall be found either that he was unduly influenced by his wife, or was mentally incapable of doing a valid legal act.

II. As to suggestions of undue influence, all we need to say is that there is no evidence with reference thereto. There was ample opportunity, no doubt, for the wife to exercise such influence, if she was able to do so, and thereby control her husband's action; but the burden of proof is on the plaintiffs to show it if it existed, and there is not the slightest support for the claim.

2. BURDEN of proof: undue influence.

III. To make clear the position of plaintiffs with reference to the mental capacity of deceased at the time

the letter directing the change was written, some further facts must be stated. Marvin Walts, just prior to his last illness, a few weeks before his death, was a man of about 63 years of age, perhaps of impaired physical vigor, but capable of carrying on his occupation as a carpenter. During his last illness he was afflicted with a variety of diseases, including acute bronchitis, inflamatory rheumatism, and neuralgia of the heart. Especially during the first two or three weeks of illness, he suffered perhaps almost continuously acute and distressing pain, to relieve which his attending physician administered, and directed the administration of, considerable and frequent doses of medicine, including chloral and morphine. As a result of the administration of the medicine and the fever attending his diseases, the patient was frequently, and sometimes for a considerable part of each day, in a condition of stupor and unconscious, and during his unconsciousness he was frequently flighty, and talked irrationally. This general condition continued up to about the time when the letter was written, and several witnesses who saw him during this time gave it as their opinion that he was not of sound mind, and was incapable of exercising a valid legal judgment. But look·ing at the facts to which they testified, and on which their opinions are based, it becomes perfectly plain that there was no sufficient evidence of insanity or mental unsoundness. For instance, much stress is laid on the fact that during this time the deceased talked frequently about getting a double shovel plow and seed potatoes, but it appears on investigation that, absurd as this talk on his part may have been under the immediate circumstances and surroundings, nevertheless it was addressed to one with whom he had formerly had conversations in regard to opening a garden in the spring, which was then not far distant, and the only ciic imstance indicating that the conversation was irrational was the fact of its being wholly

*3. UNSOUND-NESS of mind: evidence.*

disconnected with the conversation which was addressed to him. Certainly no medical authority would say that this would indicate insanity, however much it might tend to prove that he was at the time partially unconscious of what was going on about him. Another witness dwells on the fact of his lamentations in regard to his financial condition, basing his surprise at these lamentations on the assumption that the deceased was well off; but the testimony further discloses that at the time of his illness deceased had but little ready money, and that his homestead was under mortgage, and it is certainly not surprising that one in the distress of a severe illness, and anticipating approaching dissolution, should feel anxious as to the condition of the family dependent upon him. Without discussing the evidence further, it is enough to say that it does not tend to prove an unsound mind. That deceased was frequently in a stupor would not discredit his intelligence and comprehension of his legal relations during intervals of wakefulness, and it clearly appears that he had such intervals from day to day, during which he talked rationally and intelligently. See *Reeves v. Howard* 118 Iowa, 121.

IV. One other circumstance relied on in behalf of plaintiffs as showing lack of mental capacity on the part of the deceased is that, although in the letter written to him by the officers of the grand lodge, in response to his request for information as to how the change of beneficiary should be made, he was given explicit instructions to proceed by filling out and signing a blank form which he would find on the back of the certificate, and sending it to a certain specified officer, he disregarded these directions, and authorized the change in a letter, as above described, which was directed to a different officer than the one named. But certainly this does not show, or even tend to show, lack of mental capacity. It might well be that the certificate and the letter

4. SAME: evidence of.

of directions were then beyond his reach, and that in his distress he adopted what was a perfectly rational, and it may be, under the circumstances, the natural, and perhaps only, method then available to him of having his wishes carried out.

On the whole, after fully considering all the claims made by counsel for plaintiffs, we are satisfied that the decree of the lower court was correct, and it is AFFIRMED.